**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RUSS McKAMEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:24-cv-00363** |
| **JONATHAN SKRMETTI, Attorney General for the State of Tennessee, in his official capacity; and CARTER LAWRENCE, Commissioner of the Tennessee Department of Commerce and Insurance and State Fire Marshal, in his official capacity,** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Before the court is plaintiff Russ McKamey's Motion to Alter or Amend Judgment (Doc. No. 32) under Rule 59(e) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the motion will be denied.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a party to move "to alter or amend a judgment [within] 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Rule 59(e) "provides a procedure for correcting manifest errors of law or fact or considering the import of newly discovered evidence." *Lamar OCI S. Corp. v. Tenn. Dep't of Transp.*, No. 3:21-cv-226, 2022 WL 3052409, at *1 (E.D. Tenn. Aug. 2, 2022) (quoting *Helton v. ACS Grp.*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)). For a court to grant a motion under Rule 59(e), there must be "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009)

(quoting *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006)). "Rule 59(e) motions are 'aimed at reconsideration, not initial consideration.'" *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007) (quoting F*DIC v. World Univ, Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). That is, "[a] Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier, but were not." *Gulley v. Cnty. of Oakland*, 496 F. App'x 603, 612 (6th Cir. 2012); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).

## II. BACKGROUND

In an Amended Complaint filed on May 2, 2024 (Doc. No. 18), plaintiff Russ McKamey asserted claims against defendants Jonathan Skrmetti, Tennessee Attorney General and Reporter ("AG"), and Carter Lawrence, Commissioner of the Tennessee Department of Commerce and Insurance ("TDCI") and State Fire Marshal, in their official capacity only, under 42 U.S.C. § 1983. Specifically, the Amended Complaint set forth: (1) a claim that the AG's office's issuance and threatened enforcement of a formal Request for Information ("RFI") in November 2023 violated McKamey's Fifth Amendment rights (Count One); a claim that the TDCI Commissioner's office violated his Fourth Amendment rights by threatening "warrantless 'continued inspections'" to "intimidate [him] into unnecessary compliance" (Count Three) (Doc. No. 18 ¶¶ 132, 136); (4) claims that the Commissioner threatened "warrantless 'continued inspections'" in retaliation for McKamey's invoking his rights under the Fourth Amendment (Count Four) and exercising his First Amendment right not to speak (Doc. No. 18 ¶¶ 79, 107, 150) (Count Five); (5) and claims seeking judicial declarations under 28 U.S.C. § 2201 to the effect that "Mr. McKamey is entitled to invoke his Fifth Amendment privilege in response to every question and demanded action by the RFI" and "entitled not to participate in the RFI in any manner with no penalty as a result" (Doc. No. 18 ¶¶ 159, 160); that he is "entitled under the Fourth Amendment to be presented with a

warrant supported by probable cause . . . prior to any entry onto [his] property" by agents of the TDCI; and that he is "entitled under the First Amendment to not complete any sworn affidavit demanded" by agents of the TDCI (Doc. No. 18 ¶¶ 159, 160, 165, 174) (Counts Six through Eight).[1]

In August 2024, the court granted in its entirety the Motion to Dismiss filed by the defendants and entered judgment in their favor. (Doc. Nos. 29, 30.)[2] The court ruled that:

(1) Count One of the Amended Complaint appeared to assert a claim based on a past violation of the Fifth Amendment. Even though the plaintiff did not expressly seek damages, he appeared to be seeking a declaration of liability—that is, a finding that the AG's action had violated his Fifth Amendment rights. Count One did not request an injunction, as it simply asserted that the AG, in his official capacity, "is liable for his violation of Mr. McKamey's constitutional rights under the Fifth Amendment." (Doc. No. 18 ¶ 117.) The court found both that the plaintiff's claim for any type of retroactive relief was barred by sovereign immunity and that the Complaint failed to state a claim based on a past violation of his Fifth Amendment rights. Insofar as Count One might be construed as asserting a claim for prospective relief that would not be barred by sovereign immunity, the court found that that claim was the subject of Count Six, which it addressed separately.

(2) Count Six fell within the scope of *Ex Parte Young*, insofar as it sought a declaration of the plaintiff's rights in an attempt to avoid what he perceived as an imminent risk of a future violation of his Fifth Amendment rights. Specifically, the plaintiff sought a declaration that he "is

---

[1] Count Two claimed that Tenn. Code Ann. § 47-18-106, a provision of the Tennessee Consumer Protection Act, is facially unconstitutional. The plaintiff expressly abandoned this claim in his Response to the defendants' Motion to Dismiss. (Doc. No. 26 at 16, 27.)

[2] At the same time, the court denied as moot the plaintiff's also-pending Amended Motion for Preliminary Injunction.

entitled to invoke his Fifth Amendment privilege in response to every question and demanded action by the RFI" and that he is "entitled under the Fifth Amendment to not participate in the RFI in any manner with no penalty as a result." (Doc. No. 18 ¶¶ 159, 160.) The court found that Count Six failed to state a colorable claim for relief, because the plaintiff failed to

> state sufficient facts to entitle him to a declaration regarding his rights vis-à-vis the RFI. He has not established that he is imminently at risk of being compelled to provide testimony or information in violation of his Fifth Amendment rights, that he is being threatened with the loss of other rights unless he waives his Fifth Amendment rights, or that the state procedure under which the RFI was issued provides inadequate procedural safeguards.

(Doc. No. 29 at 23.)

(3) Count Three asserted that the TDCI Commissioner, in his official capacity, was "liable for his "invasion and violation of Mr. McKamey's constitutional rights under the Fourth Amendment." (Doc. No. 18 ¶ 137.) Although the plaintiff did not expressly seek damages, he appeared to seek a declaration that the Commissioner had committed a past violation of the plaintiff's rights. (*See also id.* ¶ 132 ("Defendant Lawrence's office stating that warrantless 'continued inspections will occur' is an invasion of Mr. McKamey's rights under the Fourth Amendment complete upon its utterance.").) Because Lawrence was sued in his official capacity only, the court found that this claim, which appeared only to seek relief for a past violation, was barred by sovereign immunity. (Doc. No. 29 at 25.) The court also found that, even if the claim were not barred, the Amended Complaint failed to state a claim for a past violation of the plaintiff's Fourth Amendment rights. Insofar as it sought prospective relief based on the threat of future violations, the court found that claim covered by Count Seven.

(4) Count Seven of the Amended Complaint sought a declaration under 28 U.S.C. § 2201 to the effect that McKamey "is entitled under the Fourth Amendment to be presented a warrant supported by probable cause prior to any entry onto his property by Defendant Lawrence or his

agents." (Doc. No. 18 ¶ 166.) The court found that the allegations in the Amended Complaint did not establish the existence of a case or controversy and that the plaintiff was not entitled to the requested relief, because the plaintiff failed to plausibly allege that future *warrantless* inspections would occur or that he was imminently at risk of a violation of his rights under the Fourth Amendment.

(5) The court construed Count Four as articulating a claim for retroactive relief, because it stated that the Commissioner "is liable to Mr. McKamey for retaliation against protected conduct [sic]" (Doc. No. 18 ¶ 142.) The court found again that a claim for any type of retroactive relief was barred by sovereign immunity, but also found that the plaintiff's allegations of retaliation "fail[ed] to cross the threshold 'from conceivable to plausible.'" (Doc. No. 29, at 27 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).)

(6) Count Five also appeared to seek retroactive relief, insofar as it asserted that the Commissioner had engaged in retaliation and was "liable to Mr. McKamey for retaliation against protected conduct [sic]." (Doc. No. 18 ¶ 152.) Again, the court found that any type of retroactive relief was barred by sovereign immunity and that, in any event, the Amended Complaint failed to state a plausible claim for First Amendment retaliation. (Doc. No. 29 at 31.)

(7) Count Eight sought a declaration of the plaintiff's rights under the First Amendment, specifically, a declaration that the plaintiff was entitled under the First Amendment not to sign a sworn affidavit and that retaliation for refusal to do so was prohibited by the First Amendment. (Doc. No. 18 ¶ 174.) The court found that the Amended Complaint failed to set forth facts that, if true, would establish the plaintiff's entitlement to the requested declaration. (Doc. No. 29 at 31.)

The plaintiff now seeks the court's reconsideration of its prior ruling, asserting that (1) he did not seek money damages; (2) he has "now been charged with multiple criminal offenses by the

State"; and (3) he adequately pleaded his claims. (Doc. No. 33, at 1.) As an initial matter, the court notes that it, in fact, recognized that the plaintiff did not expressly seek damages but found that his claims in the Amended Complaint could only be construed as seeking some type of retroactive relief—perhaps a declaration—based upon past violations of the plaintiff's constitutional rights. In addition, however, the court also construed other counts of the Amended Complaint as seeking declarations (and injunctive relief) based on allegedly ongoing or threatened future violations of the plaintiff's rights, and it addressed those claims accordingly.

Second, the plaintiff had been charged with criminal offenses, and those charges dismissed, even before the court ruled on the Motion to Dismiss, so the criminal charges do not qualify as newly discovered evidence that would affect the court's ruling. Even if that were not the case, the plaintiff has not explained why the bringing of criminal charges (or dismissal thereof) affects the viability of his claims.

In arguing that he adequately pleaded his claims, the plaintiff asserts that the court improperly failed to construe the facts and draw inferences therefrom in his favor, improperly injected a merits analysis into the inquiry into standing, and otherwise erred as a matter of law in dismissing his claims. The court finds no merit to the plaintiff's arguments.

## III. DISCUSSION

### A. Fifth Amendment Claims – Counts One and Six

The plaintiff asserts that the court improperly held that he failed to establish that he was imminently at risk of being compelled to provide testimony or information in violation of his Fifth Amendment rights, noting that the court's "imminently at risk" language "sounds in standing doctrine." (Doc. No. 33 at 7.) He maintains that he has adequately alleged an injury-in-fact because he will be—and but for filing this lawsuit, already would have been—subject to an enforcement

action by Defendant Skrmetti over his valid invocation of his Fifth Amendment privilege." (*Id.*) at 7.)

The court, in short, is not persuaded. Insofar as the court's use of "imminent risk of harm" language was confusing, the court clarifies that the allegations in the Amended Complaint, accepted as true, fail to establish that the AG's actions threatened to violate the plaintiff's rights under the Fifth Amendment and that the plaintiff failed to assert an actual or imminent injury as required both to state a claim at all and to have standing to seek prospective relief. *See Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) ("To obtain declaratory or injunctive relief, a claimant must show a present ongoing harm or imminent future harm." (citing *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001)). The court reiterates that merely being required to assert the Fifth Amendment privilege on a question-by-question basis, in response to the RFI, does not amount to a deprivation of the privilege. (*See* Doc. No. 29, at 20–21.) And, insofar as the plaintiff seeks a declaration to the effect that he should suffer "no penalty as a result" of asserting a Fifth Amendment privilege, as the court stated in dismissing this claim, the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Cholewa v. United States*, 581 F. Supp. 3d 871, 887 (E.D. Mich. 2022) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

Finally, insofar as the plaintiff claims that the court "discredit[ed] his allegations" by discounting his assertion that the AG's office had already told him that, if it did not receive a response to the RFI, it would "pursue enforcement of [the] RFI" (*see* Doc. No. 33, at 19 (citing Doc. No. 18 ¶ 83)), the court observes simply that enforcement of the RFI does not equate to, or even suggest, a potential violation of the plaintiff's Fifth Amendment rights.

### B. Fourth Amendment Claims – Counts Three, Four, and Seven

The plaintiff's arguments regarding the court's ruling on his claims for injunctive or declaratory relief based on ongoing or potential Fourth Amendment violations amount to reasserting the arguments he already made in response to the Motion to Dismiss or raising arguments he could have raised. Neither is a proper basis for a Rule 59(e) motion.

As for the plaintiff's Fourth Amendment retaliation claim, because the plaintiff's fear of future warrantless inspections was entirely speculative and unsupported by actual facts, the court found that he failed to establish an actual or imminent injury in fact. The plaintiff fails to point to any clear error of law, while at the same time conflating his Fourth Amendment and First Amendment retaliation claims. Insofar as he now seeks to rely on the Sixth Circuit's opinion in *Carman v. Yellen*, 112 F.4th 386 (6th Cir. Aug. 9, 2024), as new law, he has not shown that *Carman* actually changed any applicable point of law or that it applies to his circumstances. It also bears mentioning that, because the inspection already conducted on the plaintiff's property (which the plaintiff does not challenge in this lawsuit) established probable cause to believe that the plaintiff's property was in violation of applicable building codes, the Fire Chief's response to the plaintiff's refusal of the various options presented to him for addressing the code violations—which also referenced the Fourth Amendment—does not give rise to an inference of retaliation. *Accord Nieves v. Bartlett,* 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

### C. First Amendment Claims – Counts Five and Eight

As for his First Amendment claims, the plaintiff first asserts that the court "appears [to have] required Mr. McKamey to prove his entitlement to a declaratory judgment through his Amended Complaint alone." (Doc. No. 33 at 20.) The plaintiff fails to recognize that the point of a Motion to Dismiss is to challenge whether the pleading at issue states a claim for which relief

may be granted. In ruling on such a motion, the court construed the plaintiff's allegations as true and found that, even accepted as true, the allegations failed to show that the plaintiff would be entitled to relief.

The court reiterates that the plaintiff failed to allege facts suggesting that he was "compelled" to engage in any speech. He either needed to sign a proposed affidavit or draft his own, affirming that he would not use his barn for entertainment activities, or, alternatively, agree to bring the barn in compliance with the building code. The building code violation was established, and the plaintiff has not plausibly alleged any facts suggesting that the defendant's attempts to bring him into compliance constituted retaliation.

## IV. CONCLUSION

The plaintiff fails to provide a basis for reconsideration of the court's previous ruling under Rule 59(e), and the motion will be denied in its entirety. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge